IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VERSATA SOFTWARE, INC. and VERSATA DEVELOPMENT GROUP, INC., ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Civ. No. 12-931-SLR |
| CALLIDUS SOFTWARE INC., ) ) | |
| Defendant. ) | |

Jack B. Blumenfeld, Esquire and Julia Heaney, Esquire of Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Alan D. Albright, Esquire, Michael Chibib, Esquire, Conor M. Civins, Esquire, and Benjamin L. Bernell, Esquire of Bracewell & Guiliani LLP.

Arthur G. Connolly, III, Esquire of Connolly Gallagher LLP, Wilmington, Delaware. Counsel for Defendant. Of Counsel: Deborah E. Fishman, Esquire, Assad H. Rajani, Esquire, and Michael S. Tonkinson, Esquire, of Dickstein Shapiro LLP.

**MEMORANDUM OPINION**

Dated: May 16, 2013
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

On July 19, 2012, Versata Software, Inc. and Versata Development Group, Inc. (collectively, "Versata") filed a complaint against defendant Callidus Software Inc.'s ("Callidus") alleging that certain Callidus software, "including Callidus' SPM Suite, and specifically including Callidus' TrueComp and TrueProducer products" (collectively "the accused products"), infringe U.S. Patent Nos. 7,958,024 ("the '024 patent"), 7,908,304 ("the '304 patent"), and 7,904,326 ("the '326 patent"). (D.I. 1) Presently before the court are Callidus' motions to transfer this action to the Northern District of California (D.I. 9) and to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) (D.I. 14). The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338(a). For the reasons that follow, both motions are denied.

## II. BACKGROUND

Plaintiffs Versata Software, Inc. and Versata Development Group, Inc. are both Delaware corporations with their principal place of business at 6011 West Courtyard Drive, Austin, Texas 78730. (D.I. 1 at ¶ 1-2) Versata has no offices or employees in California.

Callidus was incorporated in Delaware in 1996 and maintains its principal place of business at 6200 Stoneridge Mall Road, Suite 500, Pleasanton, California 94588. (D.I. 1 at ¶ 3; D.I. 2-3) Callidus avers that the accused products were primarily designed and developed in their California location and any continued maintenance is also conducted from there. (D.I. 10 at 3) Further, its internal company servers, which contain technical documents for the accused products, sales and marketing documents,

and other company documents, are located at its California headquarters. (D.I. 10 at 3) While 135 of Callidus' 494 employees work in the California headquarters, the balance work in sales and service facilities throughout the United States (but not in Delaware). Callidus also has international offices. (D.I. 10 at 3; D.I. 18 at 4)

## III. VENUE

### A. Standard of Review

Section 1404(a) of Title 28 of the United States Code grants district courts the authority to transfer venue "[f]or the convenience of parties and witnesses, in the interests of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Much has been written about the legal standard for motions to transfer under 28 U.S.C. § 1404(a). *See, e.g., In re Link_A_Media Devices Corp.*, 662 F.3d 1221 (Fed. Cir. 2011); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995); *Helicos Biosciences Corp. v. Illumina, Inc.*, 858 F. Supp. 2d 367 (D. Del. 2012).

Referring specifically to the analytical framework described in *Helicos*, the court starts with the premise that a defendant's state of incorporation has always been "a predictable, legitimate venue for bringing suit" and that "a plaintiff, as the injured party, generally ha[s] been 'accorded [the] privilege of bringing an action where he chooses.'" 858 F. Supp. 2d at 371 (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 31 (1955)). Indeed, the Third Circuit in *Jumara* reminds the reader that "[t]he burden of establishing the need for transfer . . . rests with the movant" and that, "in ruling on defendants' motion, the plaintiff's choice of venue should not be lightly disturbed." 55 F.3d at 879

2

(citation omitted).

The Third Circuit goes on to recognize that,

> [i]n ruling on § 1404(a) motions, courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum."

Id. (citation omitted). The Court then describes some of the "many variants of the private and public interests protected by the language of § 1404(a)." Id.

> The private interests have included: plaintiff's forum of preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses - **but only to the extent that the witnesses may actually be unavailable for trial in one of the fora**; and the location of books and records (**similarly limited to the extent that the files could not be produced in the alternative forum**).

> The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

Id. (citations omitted) (emphasis added).

### B. Analysis

With the above "jurisdictional guideposts" in mind, the court turns to the "difficult issue of federal comity" that transfer motions present. E.E.O.C. v. Univ. of Pa., 850 F.2d 969, 976 (3d Cir. 1988). Versata has not challenged Callidus' assertion that the

3

instant action could have been brought in the Northern District of California.¹ *See* 28 U.S.C. § 1404(a); (D.I. 18 at 2-3)

The parties have all chosen legitimate forums in which to pursue the instant litigation. In this regard, certainly a party's state of incorporation is a traditional and legitimate venue, as is the locus of a party's business activities. Given that "convenience" is separately considered in the transfer analysis, the court declines of elevate a defendant's choice of venue over that of a plaintiff based on defendant's convenience. Therefore, the fact that plaintiffs have historically been accorded the privilege of choosing their preferred venue for pursuing their claims remains a significant factor.

A claim for patent infringement arises wherever someone has committed acts of infringement, to wit, "makes, uses, offers to sell, or sells any patented invention" without authority. *See generally* 35 U.S.C. § 271 (a); *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360 (Fed. Cir. 1998) (an infringement claim "arises out of instances of making, using, or selling the patented invention"). While Versata asserts that alleged infringing activities have taken place in Delaware as Callidus "makes, uses, licenses, sells, offers for sale, and/or imports the infringing products in Delaware," Callidus responds that Versata has not "identif[ied] any act of alleged infringement in Delaware, and Callidus is aware of none."

The Third Circuit in *Jumara* indicated that, in evaluating the convenience of the parties, a district court should focus on the parties' relative physical and financial

---

¹Versata requests, in the alternative, that the instant action be transferred to the Western District of Texas, where its headquarters are located. (D.I. 18 at 3)

4

condition. In this case, there is no information provided to compare the size of Versata to Callidus' 494 employees. However, the parties' litigation history shows each has litigated in several states, including Delaware.[2]

Considering the convenience of the witnesses and specifically whether witnesses "actually may be unavailable for trial in one of the fora," Callidus argues that at least one of "seven third-party witnesses with potentially relevant knowledge" has expressed unwillingness to attend a trial in Delaware.[3] (D.I. 10 at 12; D.I. 20 at 7)

According to Callidus, its server at its California headquarters contains the potentially relevant technical, financial, marketing, and sales documents, negating any argument that the documents would not be readily transferable to Versata's counsel in Texas or available for trial in Delaware.[4] (D.I. 10 at 3, 14)

The court recognizes that trial in California would be less expensive and easier for Callidus. As Delaware and Northern California are nearly equidistant from Versata's Austin headquarters, it would most likely be equally expensive for Versata to litigate in either venue.

---

[2] Searches by party name in the PACER case locator reveal Versata as a party to 47 civil cases and Callidus to 15 cases.

[3] With respect to trials, in the nine patent jury trials this judicial officer conducted between March 2010 and October 2011, an average of three fact witnesses per party appeared live for trial, with the average length of trial being 28 hours (with the parties often using less time than allocated, on average, 25 hours). Further, depositions in the cases over which this judicial officer presides are generally taken where the deponents reside or work. There is no suggestion that this case will be an exception.

[4] Callidus' arguments that Versata will have to travel to California to view source code is not persuasive as source code can be viewed in any secure location selected by the parties. See, e.g., District of Delaware's Default Standards for Access to Source Code (adopted Dec. 8, 2011).

With respect to administrative difficulty, trial in this case will be scheduled consistent with the parties' proposals. Local interest in deciding local controversies is not a dispositive factor, as patent litigation does not constitute a local controversy in most cases. Indeed, patent litigation implicates constitutionally protected property rights, is governed by federal law reviewed by a court of appeals of national (as opposed to regional) stature, and affects national (if not global) markets. *See Cradle IP, LLC v. Texas Instruments, Inc.*, --- F.Supp.2d ----, 2013 WL 548454, at *4 (D. Del. February 13, 2013). In this regard, the instant litigation involves software sold and distributed throughout the United States. The remaining *Jumara* public interest factors - the enforceability of a judgment, the public policies of the fora, and the familiarity of the judge with state law - carry no weight in this transfer analysis.

In sum, Callidus has the burden of persuading the court that transfer is appropriate, not only for its convenience but in the interests of justice. In this case, Versata chose a legitimate forum which all parties have in common - their state of incorporation. As is usual in these cases, the convenience factors do not weigh in favor of transfer, because discovery is a local event and trial is a limited event. Although Delaware is not the locus of any party's business activities, it is a neutral forum and no more inconvenient for Calllidus than Texas, the locus of Versata's business activities. Given that both Versata and Callidus have experience litigating in multiple jurisdictions, the court is not persuaded that transfer is warranted in the interests of justice.

## IV. FAILURE TO STATE A CLAIM

### A. Standard of Review

In reviewing a motion filed under Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). A court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal quotation marks omitted) (interpreting Fed.R.Civ.P. 8(a)). A complaint does not need detailed factual allegations; however, "a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 545 (alteration in original) (citation omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* Furthermore, "[w]hen there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950 (2009). Such a determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.*

Under 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent

7

shall be liable as an infringer." To demonstrate inducement of infringement, the patentee must establish, first, that there has been direct infringement and, second, that the alleged infringer had "knowledge that the induced acts constitute patent infringement." *Global–Tech Appliances, Inc. v. SEB S.A.*, ––– U.S. –––, 131 S. Ct. 2060, 2068 (2011). "Inducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc in relevant part).

Under 35 U.S.C. § 271(c), a patentee must demonstrate that an alleged contributory infringer has sold, offered to sell or imported into the United States a component of an infringing product "knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use." Therefore, § 271(c) "require[s] a showing that the alleged contributory infringer knew that the combination for which [its] component was especially designed was both patented and infringing." *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964).

### B. Analysis

Versata alleges that "Callidus makes, uses, licenses, sells, offers for sale, and/or imports in[to] the State of Delaware, in this judicial district, and elsewhere within the United States software that infringes the '024, '304 and '326 patents, including Callidus's SPM Suite, and specifically including Callidus's TrueComp and TrueProducer products." (D.I. 1 at ¶ 11) For each of the three patents, Versata alleges that "Callidus

8

has been and is now directly infringing, and indirectly infringing by way of inducing the infringement of and/or contributing to the infringement of, the . . . patent in the State of Delaware, in this judicial district, and elsewhere within the United States by, among other things, making, using, licensing, selling, offering for sale, or importing software, including . . . software and related services covered by one or more claims of the . . . patent, all to the injury of Versata." (*Id.* at ¶¶ 13, 18, 23)

With respect to Callidus' allegations that Versata's claims of direct infringement do not adequately identity the accused products, the court finds that Versata's complaint sufficiently identifies the accused software, as "including Callidus's [sic] SPM Suite, and specifically including Callidus's [sic] TrueComp and TrueProducer," as required by Fed. R. Civ. P. Form 18. No more is required of a plaintiff at the pleading stage. *See McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354 (Fed. Cir. 2007); *Eon Corp. IP Holdings LLC v. Flo TV Inc.*, 2011 WL 2708945 (D. Del. July 12, 2011).

Callidus' allegations that Versata's complaint does not sufficiently plead indirect infringement are equally unavailing. Consistent with this court's holding in *Walker Digital LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559 (D. Del. 2012), Versata's claims of indirect infringement are facially plausible and provide Callidus with adequate notice. Versata's complaint asserts that Callidus had knowledge of its infringement "at least as of the date of the filing of this complaint." (D.I. 1 at ¶ 15); *Walker Digital*, 852 F. Supp. 2d at 565 (explaining that "defendant's receipt of the complaint and decision to continue its conduct despite the knowledge gleaned from the complaint satisfies the requirements of *Global–Tech*").

Versata argues that, as Cadillus licenses and/or sells the accused products, Versata need not specifically identify a particular customer to support a pleading of induced infringement. (D.I. 1 at ¶ 13) As Versata alleges that Callidus directly infringes the claims, these two allegations taken together suffice to support the pleading burden. (*Id.* at ¶¶ 13-14)

With respect to contributory infringement, Versata has alleged that Callidus directly infringes and has knowledge that its products lack substantial non-infringing uses. As with inducement, this sets forth a plausible claim for contributory infringement under the pleading requirements. The court concludes that Versata has sufficiently identified the products at issue for the purposes of claiming direct infringement, as well as satisfied the requirements of *Twombly* and *Iqbal* with respect to the allegations of indirect infringement found in the complaint.

## V. CONCLUSION

For the foregoing reasons, Callidus' motions to transfer venue (D.I. 9) and to dismiss for failure to state a claim (D.I. 14) are denied.